IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES JETER JR YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV1063 |
| | ) | |
| B. FERGUSON, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER, MEMORANDUM OPINION, AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This is a *pro se* civil rights action filed under 42 U.S.C. § 1983 by Plaintiff James Jeter Jr Young, an inmate in the North Carolina Department of Public Safety. His central allegations in this case are that Defendant B. Ferguson, a police officer in Winston-Salem, North Carolina, improperly searched his person before discovering a bag of heroin in Plaintiff's pants. Defendant filed a Motion for Summary Judgment [Doc. #28] which Plaintiff opposes. Plaintiff also filed his own Motion for Summary Judgment [Doc. #31], as well as an earlier Motion [Doc. #26] seeking the appointment of counsel. The Court will now address all three pending motions. As set out below, the Court concludes that the prior denial of Plaintiff's motion to suppress in his state criminal case precludes Plaintiff from now bringing his claims here challenging that same search.

I.  Allegations and Facts

Plaintiff's Complaint makes only sparse factual allegations. Plaintiff claims that Defendant searched him during a traffic stop on a ramp to an interstate highway in Winston-

Salem at approximately 9:30 p.m. on March 24, 2017. (Complaint [Doc. #2] § IV.) Plaintiff states that Defendant justified the search of Plaintiff's person by stating that he smelled the odor of burnt marijuana coming from Plaintiff. (Id., Attach.) He alleges that Defendant ordered him out of the vehicle he was driving, ordered him to leave his cellular telephones in the seat, and grasped Plaintiff's right arm as he stepped out of the vehicle. (Id.) Plaintiff contends that Defendant then put Plaintiff's hands on the hood in "frisk position" before asking whether he had smoked marijuana or been around anyone smoking it. (Id.) When Plaintiff stated that he had not, Defendant then asked if Plaintiff minded if he checked. (Id.) Plaintiff replied, "NO!" and Defendant then began to frisk him. (Id.) Plaintiff alleges that Defendant ordered him to spread his legs further and then began to "cuff and grasp [Plaintiff's] genitals." (Id.) Plaintiff objected and attempted to turn around, but Plaintiff prevented him by leaning into his lower back. (Id.) Defendant then allegedly began to "explore [Plaintiff's] buttock area with his hand by squeezing sliding and clinching between his anal area." (Id.) Plaintiff contends that Defendant had no probable cause or reasonable suspicion justifying a search of Plaintiff's person, that Plaintiff did not willingly consent to any search, and that, if he did consent, he did not consent to a search of his genitals and buttocks.[1] (Id.) Therefore, he concludes that the search of his person violated his rights under the constitutions of both the United States and the State of North Carolina. (Id. § II(B).)[2] Based

---

[1] At times in the briefing, Plaintiff also appears to allege that the initial stop of the vehicle he was driving was improper. However, there is no allegation that Defendant made that stop and all evidence indicates that he arrived on the scene after the stop was made by other officers. Given Defendant's lack of involvement in the stop, Plaintiff cannot raise a claim against him based on the stop itself.

[2] Regarding Plaintiff's claims under the United States Constitution, Plaintiff cites the Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments as having been violated. The facts of his claim appear to attempt to raise a claim under the Fourth Amendment, which covers searches and seizures, and the Fourteenth

2

on this contention, he sues Defendant in his individual capacity seeking damages in the amount of $250,000. (Id. §§ I(B), VI.)

In support of his Motion for Summary Judgment, Defendant filed an Affidavit (Defendant's Brief [Doc. #29], Attach. 2) with supporting exhibits. In that document, Defendant recounts his version of events. He states that he arrived on the scene of the traffic stop involving the vehicle Plaintiff was driving and, a few moments later, engaged Plaintiff in conversation through an open window of the vehicle. (Id. ¶ 6-7.) However, he then smelled the odor of burnt marijuana coming from the driver's side of the vehicle. (Id. ¶ 7.) Defendant asked Plaintiff if he had smoked any marijuana and Plaintiff replied that he had not. (Id. ¶ 8.) Having been informed by another officer that he had consent to search the vehicle, Defendant asked Plaintiff to step out. (Id.) Defendant states that he then asked Plaintiff if he minded Defendant searching his person for drugs or other items and that Plaintiff answered, "'No.'" (Id.)

Defendant then searched Plaintiff's person. As he neared Plaintiff's buttocks area, he noticed Plaintiff clinching his buttocks together, as if to keep something from falling. (Id. ¶ 9.) Defendant alleges that he then felt a hard object in the area of Plaintiff's buttocks that Defendant knew was not part of Plaintiff's body. (Id.) He claims that Plaintiff "flinched" at this point, leading him to attempt to handcuff Plaintiff as Plaintiff reached for the area where Defendant felt the hard object. (Id.) After other officers helped him handcuff Plaintiff, a bag

---

Amendment, through which the Fourth Amendment extends to state officers. However, nothing in the Complaint implicates the Fifth (indictment, double jeopardy, self-incrimination, federal due process, taking of private property for public use), Sixth (speedy and public jury trial, informing of accusations, confrontation and compulsion of witnesses, assistance of counsel), Eighth (cruel and unusual punishment, excessive fines and bail), or Ninth (reservation of rights not enumerated) Amendments.

3

of what later turned out to be heroin fell out of the left leg of Plaintiff's pants. (Id.) Defendant asked Plaintiff if he had any other contraband, at which point Plaintiff stated that he did not, but that he had a digital scale. (Id. ¶ 10.) He then shook his right leg and the scale fell out of his pants on that side. (Id.) Plaintiff later pled guilty to possession and trafficking of heroin. (Id. ¶ 15.)

II. Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

III. Discussion

A. Claims Under the United States Constitution

As noted above, Plaintiff claims that Defendant violated his rights under the United States Constitution by frisking him without proper justification, without consent, and/or outside the bounds of any justification or consent. Defendant's primary argument in response

4

is that these claims are barred by the doctrine of collateral estoppel because Plaintiff already litigated these issues and lost on them at a suppression hearing in his state court criminal proceedings.

"The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel." Allen v. McCurry, 449 U.S. 90, 94 (1980). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Id. (citing Montana v. United States, 440 U.S. 147, 153 (1979)). This applies not only to decisions by other federal courts, but also decisions from the state courts. In fact, "Congress has specifically required all federal courts to give preclusive effect to state–court judgments whenever the courts of the State from which the judgments emerged would do so." Id. at 96. The doctrine also extends to actions under § 1983, id. at 104-05, and, specifically, to decisions made by state courts in deciding suppression issues during state criminal cases, Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993) ("A suppression hearing in an earlier state criminal trial collaterally estops the relitigation of the same issues in a § 1983 action if the elements of collateral estoppel are met.").

Because the decision upon which Defendant seeks to rely came from the courts of North Carolina, this Court must look to North Carolina law to determine whether or not Plaintiff is collaterally estopped from asserting his claims in this case. North Carolina law holds that defensive collateral estoppel applies where "the issue in question was identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and that the present parties are the same as, or in privity with, the

5

parties to the earlier action." Sartin v. Macik, 535 F.3d 284, 288 (4th Cir. 2008) (citing Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 349 S.E.2d 552, 556–57 (1986)). Also, "North Carolina courts have abandoned the final requirement of 'mutuality of estoppel' for the defensive use of collateral estoppel, so long as the party seeking to reopen the issue 'had a full and fair opportunity to litigate' the matter in the previous action." Id.

Applying those principles to the present case, the transcript of Plaintiff's suppression hearing in state court reveals that Plaintiff clearly litigated as part of his suppression hearing the questions of whether there was a sufficient constitutional basis for the frisk of his person, whether he gave valid consent for the frisk, and whether the subsequent frisk by Defendant was unreasonable in scope or beyond the bounds of any consent. His attorney specifically argued that both probable cause and exigent circumstances were required for the search that occurred. (Defendant's Brief, Attach. 3 at 57-59.) He also argued that Plaintiff did not validly consent to the search. (Id. at 61-62, 64-65.) Finally, he asserted at every turn that the search exceeded the scope needed for a simple check for marijuana or the bounds of any consent given by Plaintiff. (Id. at 59-62.)

In denying Plaintiff's motion to suppress, the state court found that there was a "reasonable articulable suspicion to stop the vehicle" that Plaintiff was driving and that subsequent contact between Plaintiff and the officers involved led to probable cause to arrest Plaintiff for several offenses. (Id. at 66.) The court also found that Defendant genuinely smelled the odor of burnt marijuana on Plaintiff. (Id. at 66, 71.) The state court also specifically found that Plaintiff consented to a search of his person for marijuana by stating "no" when asked if he minded a search for the same. (Id. at 71-72.) The state court further

6

found that Defendant engaged in an "ordinary pat-down of frisk" of Plaintiff's lower body which involved patting down the outer and inner sides of Plaintiff's left leg before instructing Plaintiff to spread his feet further apart. (Id. at 72.) When Defendant's hands passed near Plaintiff's buttocks area, Defendant then had a "spontaneous and sudden reaction to feeling something hard located on the [Plaintiff's] bottom, his buttocks area." (Id.) After that "startled reaction," Plaintiff clinched his body and began to resist, leading other officers to intervene and handcuff Plaintiff before the bag of drugs fell out of the leg of his pants. (Id. at 72-73.) All of these events were illustrated not only by testimony from the officers, but also by video footage from a body camera worn by one of the officers. (Id. at 74.) Based on those findings, the state court concluded that probable cause existed to arrest Plaintiff at the time he was searched or frisked, that he additionally gave knowing and voluntary consent for that search, and that the search that followed "was not an unreasonable search under the totality of the circumstances then existing, and thus, did not offend the [Plaintiff's] rights pursuant to the United States and or North Carolina constitutions['] . . . protection against unreasonable searches and seizures." (Id. at 76.) The court then ruled against Plaintiff on his suppression motion. (Id. at 77.)

Based on the foregoing record, it is abundantly clear that Plaintiff raised in the state court the same issues he raises here, that he not only had a full and fair opportunity to litigate them, but actually did litigate them, that the issues were necessary to a decision on his suppression motion, and that he lost on every issue. For that reason, under the authority cited above, he is collaterally estopped from relitigating these issues in the present action.

7

Defendant's Motion for Summary Judgment should be granted on this basis, Plaintiff's Motion for Summary Judgment should be denied, and this case should be dismissed.[2]

B.     Claims Under the North Carolina Constitution

In addition to Plaintiff's claims under the United States Constitution, Plaintiff also attempts to raise claims under the North Carolina Constitution against Defendant in his individual capacity. However, Plaintiff also litigated his claims under the North Carolina Constitution in the state suppression hearing, where the state trial court ruled against him. (Suppression Tr. at 76.) Therefore, any claims under the North Carolina Constitution are barred for the same reasons discussed above. These claims also fail for a second reason, which is that there is no direct cause of action against individual defendants under the North Carolina Constitution. Corum v. Univ. of North Carolina, et al., 330 N.C. 761, 787-88, 413 S.E.2d 276, 292-93 (1992); see also Love-Lane v. Martin, 355 F.3d 766, 789 (4th Cir. 2004). Defendant's Motion for Summary Judgment should be granted and Plaintiff's Motion for Summary Judgment denied as to these claims for this additional reason.

C.     Motion for Appointment of Counsel

Prior to filing his Motion for Summary Judgment in this case, Plaintiff filed a Motion [Doc. #26] requesting an appointment of counsel in order to help him file for summary judgment. His later filing of his Motion for Summary Judgment appears to moot that request. Moreover, this Court has previously considered and denied Plaintiff's prior requests for

---

[2] In addition, the Court notes that to the extent Plaintiff's claims are an attempt to call his criminal convictions into question, the claims would be barred under Heck v. Humphrey, 512 U.S. 477 (1994), absent a showing that the convictions had been separately vacated.

8

appointment of counsel in this case, and the Court finds no reason to revisit those determinations at this time.  As set out above, Plaintiff's claims in the present action are clearly barred by his prior unsuccessful litigation of those same claims through counsel in his state criminal case.  Therefore, the request will be denied.

Plaintiff has also filed a copy of Interrogatories to Defendant [Doc. #35].  However, discovery has closed, and there is no basis for additional discovery given the determination set out above.

IT IS THEREFORE ORDERED that Plaintiff's Motion [Doc. #26] seeking appointment of counsel is denied.

IT IS RECOMMENDED that Defendant's Motion for Summary Judgment [Doc. #28] be granted, that Plaintiff's Motion for Summary Judgment [Doc. #31] be denied, and that this action be dismissed.

This, the 26th day of July, 2019.

                                                  /s/ Joi Elizabeth Peake
                                            United States Magistrate Judge